UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
RODNEY GREENIDGE,

Plaintiff,

v.

SUFFOLK COUNTY POLICE DEPARTMENT, et al.,

Defendants.
--------------------------------------------------------------X

**MEMORANDUM AND ORDER**
25-CV-3604-SJB-JMW

**BULSARA, United States District Judge:**

Plaintiff Rodney Greenidge filed this action against the Suffolk County Police Department ("SCPD"), Suffolk County, and Suffolk County Police Officer Travis Meehan (collectively, "Defendants"), asserting claims under Section 1983 for violation of his Fourth Amendment and Fourteenth Amendment rights. He alleges he was unlawfully stopped and racially profiled by Meehan while driving near Lindenhurst, New York. Defendants have moved to dismiss Greenidge's Amended Complaint in its entirety. (Defs.' Mot. to Dismiss dated Oct. 20, 2025 ("Defs.' Mot."), Dkt. No. 23-6). For the reasons explained below, the motion is granted in part and denied in part.

STANDARD OF REVIEW

"To survive a motion to dismiss [pursuant to Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain more than "naked

assertion[s] devoid of further factual enhancement." *Id.* (quotations omitted). In other words, a plausible claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; Fed. R. Civ. P. 8(a)(2). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). The determination of whether a party has alleged a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

This pleading requirement "does not impose a probability standard at the motion-to-dismiss stage." *Mosaic Health, Inc. v. Sanofi-Aventis U.S., LLC*, 156 F.4th 68, 77 (2d Cir. 2025) (noting that plausibility does not equate to probability). And "on a Rule 12(b)(6) motion it is not the province of the court to dismiss the complaint on the basis of the court's choice among plausible alternatives. Assuming that [plaintiff] can adduce sufficient evidence to support its factual allegations, the choice between or among plausible interpretations of the evidence will be a task for the factfinder." *Id.* (quotations omitted).

For the purpose of this motion, the Court is "required to treat" the Plaintiff's "factual allegations as true, drawing all reasonable inferences in favor of [Plaintiff] to the extent that the inferences are plausibly supported by allegations of fact." *In re Hain Celestial Grp., Inc. Sec. Litig.*, 20 F.4th 131, 133 (2d Cir. 2021). The Court "therefore recite[s] the substance of the allegations as if they represented true facts, with the

understanding that these are not findings of the court, as we have no way of knowing at this stage what are the true facts." *Id.*

In addition to the Amended Complaint, the Court considers documents that are incorporated by reference, documents that are integral to the pleading, and documents of which the Court may take judicial notice. *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010); *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." (quotations omitted)); *United States v. Whittingham*, No. 22-1507, 2024 WL 2104674, at *2 (2d Cir. May 10, 2024) (noting that courts are "free to take judicial notice of judgments of conviction"). "Before taking judicial notice of a document, a district court must consider whether 'no serious question as to [its] authenticity can exist,' and whether the contents of the document are 'facts capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" *James v. Bradley*, 808 F. App'x 1, 3 (2d Cir. 2020) (first quoting *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007); then quoting *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)). "When the court takes judicial notice of documents, it must rely on such documents only for the fact that the statement was made." *Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 352 (2d Cir. 2022). Put differently, "even where a public record is properly the subject of judicial notice, a court may take judicial notice only of the content of the record" and "may not

rely on the document for the truth of the matters asserted therein." *James*, 808 F. App'x at 3 (citation omitted).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On September 23, 2024, Greenidge, an African American man and retired New York City Police Department officer, was driving on Straight Path from Lindenhurst towards Wyandanch when he noticed a Suffolk County police vehicle, driven by Officer Meehan, begin following him at an unsafe distance. (Am. Compl. dated June 3, 2025, Dkt. No. 5 ¶¶ 9, 11, 13). Greenidge had three passengers in the car—all of whom were African American men, including his son. (*Id.* ¶ 10). Meehan did not activate his lights or sirens, and Greenidge continued driving along Straight Path for approximately three miles with Meehan tailing him. (*Id.* ¶¶ 11–12).

At the intersection of Straight Path and Route 109, Greenidge stopped at a red light, and Meehan placed his car into park and approached Greenidge's vehicle on the driver's side without activating any lights or sirens. (*Id.* ¶¶ 16–17). Meehan demanded Greenidge produce his license, registration, and proof of insurance, without telling Greenidge why he had approached the vehicle. (*Id.* ¶ 18). Greenidge immediately told Meehan he wanted a supervisory officer to respond to the scene, as he believed it was clear Meehan had racially profiled him and his passengers and had no probable cause to engage in a traffic stop. (*Id.* ¶ 20). Sergeant Maresca then responded to the scene, and Greenidge was ultimately issued a summons for failing to signal a lane change in violation of New York Vehicle and Traffic Law § 1163D, after Greenidge and his vehicle had been stopped for at least 20 minutes. (Am. Compl. ¶¶ 20–21). Ultimately,

Greenidge was convicted of this traffic violation on November 20, 2024, and sentenced to a fine of $ 150 with an administrative fee and a surcharge, for a total fine of $ 293. (*See* Nov. 20, 2024 Disposition Record, attached to Defs.' Mot. as Ex. B, Dkt. No. 23-4; Pl.'s Driver's License Report, attached to Defs.' Mot. as Ex. C, Dkt. No. 23-5).[1]

Greenidge asserts claims for unreasonable seizure in violation of the Fourth Amendment, (Am. Compl. ¶¶ 31–38), and for violation of the Fourteenth Amendment's Equal Protection Clause, (*id.* ¶¶ 24–30). Defendants move to dismiss Greenidge's Complaint, arguing that his unreasonable seizure claim is barred by *Heck v. Humphrey*, that he fails to state an equal protection claim under the Fourteenth Amendment, and that he fails to state a *Monell* claim against Suffolk County. (Defs.' Mot. at 5–10). For the reasons explained below, the motion is granted in part and denied in part.

## DISCUSSION

### I. *Heck v. Humphrey*

"[W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). If it would, the court must dismiss the complaint, unless the conviction or sentence has been invalidated. *Id.* Importantly, *Heck* does not apply where the plaintiff "is not and never was in the custody of the State" and therefore "has no remedy in habeas corpus." *Leather v. Eyck*, 180 F.3d 420, 424 (2d Cir. 1999).

[1] The Court takes judicial notice of Greenidge's traffic violation. *See Whittingham*, 2024 WL 2104674, at *2.

*Heck* addressed "the intersection of the two most fertile sources of federal-court prisoner litigation— . . . 42 U.S.C. § 1983, and the federal habeas corpus statute, 28 U.S.C. § 2254." 512 U.S. at 480. Before *Heck*, "the Supreme Court held . . . that, for those cases at the heart of habeas corpus—those in which a prisoner challenges the fact or length of his confinement—habeas is the exclusive federal remedy[.]" *Jenkins v. Haubert*, 179 F.3d 19, 24 (2d Cir. 1999) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973)). In *Heck*, the Court further held that "a damages claim [under Section 1983] was not cognizable where its establishment 'necessarily demonstrates the invalidity of the conviction,'" recognizing that "[i]n such a case . . . the claimant could be said to be 'attacking . . . the fact or length of . . . confinement.'" *Id.* (quoting *Heck*, 512 U.S. at 481–82).

But, as a result, "where federal habeas corpus is not available to address constitutional wrongs, § 1983 must be." *Id.* at 26–27 (discussing the views expressed in the concurrences and dissent in *Spencer v. Kemna*, 523 U.S. 1 (1998)); *see also* Brian R. Means, Postconviction Remedies § 11:7 ("[A]s several courts of appeals have recognized . . . where federal habeas corpus is not available to address constitutional wrongs, § 1983 must be." (quotation omitted)). "*Heck* . . . do[es] not bar a § 1983 claim challenging the conditions of a prisoner's confinement where the prisoner is unable to challenge the conditions through a petition for federal habeas corpus." *Jenkins*, 179 F.3d at 21. As a corollary, *Heck* is inapplicable to an individual who "is not and never was in the custody of the State" and "has no remedy in habeas corpus." *See Leather*, 180 F.3d at 424 (applying *Jenkins*).

Defendants contend in conclusory fashion that Greenidge's claims are barred by *Heck* because his unreasonable seizure claim would undermine his traffic conviction for failure to signal. (Defs.' Mot. at 5–7). But Defendants have not established that *Heck* applies to this case. Greenidge was convicted of a traffic violation—which is not a criminal conviction under New York law. *See Nowakowski v. New York*, 835 F.3d 210, 219 (2d Cir. 2016) ("Traffic infractions are violations of the Vehicle and Traffic Law, 'which [are] not declared by this chapter or other law of this state to be a misdemeanor or a felony.'" (quoting N.Y. Veh. & Traf. L. § 155)). And *Heck* by its terms applies to criminal convictions. *Heck*, 512 U.S. at 487 ("[I]f the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding *criminal* judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." (emphasis added)); *see also id.* at 486 ("We think the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding *criminal* judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement, just as it has always applied to actions for malicious prosecution." (emphasis added)). As such, courts have held that *Heck* does not apply to non-criminal traffic violations. *See, e.g.*, *Glasgow v. Beary*, 2 F. Supp. 3d 419, 426 (E.D.N.Y. 2014) ("Plaintiff's Section 1983 suit does not call into question a *criminal* conviction. Rather, plaintiff was found to have committed a violation of the New York Vehicle and Traffic Law, which state law defines as 'not a crime.' *Heck* does not sweep so broadly." (quoting N.Y. Veh. & Traf. L. § 155)).

More importantly, Greenidge was never in state custody—the only sentence imposed on him was a fine—and he therefore never had a remedy in habeas corpus. *See Nowakowski*, 835 F.3d at 216 (noting that "the imposition of fines or civil disabilities, such as suspension of licenses" are typically insufficient to satisfy the custodial requirement for a habeas petition). Defendants offer no basis to distinguish this case from *Leather*—where the plaintiff was convicted of driving while impaired and sentenced to a $ 300 fine including a $ 25 surcharge, and a 90-day license suspension—and the Second Circuit held that *Heck* was inapplicable. 180 F.3d at 422, 424. Applying *Leather*, courts have concluded that *Heck* does not bar an unreasonable seizure claim in the circumstances presented here—where the plaintiff was never in state custody or only in state custody for a short time such that they had no meaningful access to habeas relief. *See, e.g.*, *Conti v. Comito*, No. 21-CV-0158, 2022 WL 4485155, at *4 (E.D.N.Y. Sep. 27, 2022) ("[P]laintiff was never in the custody of the State, because his conviction resulted in only a fine and a suspension of his driver's license. Accordingly—even assuming that plaintiff's challenge to the validity of his traffic stop challenges 'actions whose unlawfulness would render' his conviction invalid—*Heck* has no application here." (quoting *McDonough v. Smith*, 588 U.S. 109, 119 (2019)); *John v. Lewis*, No. 15-CV-5346, 2017 WL 1208428, at *7 (E.D.N.Y. Mar. 31, 2017) ("Here, there is no evidence that Plaintiff is currently incarcerated, and thus the Court can infer that Plaintiff is not 'in custody.' Therefore, *Heck* does not bar Plaintiff's Section 1983 claims." (applying *Leather*, 180 F.3d at 424)) (collecting cases). The Court reaches the same conclusion here.

Because Defendants make no other arguments for dismissal of Greenidge's Fourth Amendment claim, the motion to dismiss this claim is denied.

**II. Fourteenth Amendment Equal Protection**

The Equal Protection Clause of the Fourteenth Amendment "provides that no state shall 'deny to any person within its jurisdiction the equal protection of the laws.'" *DiStiso v. Cook*, 691 F.3d 226, 240 (2d Cir. 2012) (quoting U.S. Const. amend. XIV, § 1). "The 'central purpose' of the Equal Protection Clause is 'the prevention of official conduct discriminating on the basis of race[.]'" *Id.* (quoting *Washington v. Davis*, 426 U.S. 229, 239 (1976)). "To state a discrimination claim under the Fourteenth Amendment Equal Protection Clause and/or § 1981, plaintiffs must sufficiently allege that defendants acted with discriminatory intent." *Burgis v. N.Y.C. Dep't of Sanitation*, 798 F.3d 63, 68 (2d Cir. 2015); *see also Reynolds v. Barrett*, 685 F.3d 193, 201 (2d Cir. 2012) ("It is well established that proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause. Therefore, a plaintiff pursuing . . . a denial of equal protection under § 1983 must show that the discrimination was intentional." (quotations and citations omitted)).

There are several theories a plaintiff may advance to allege an equal protection violation, but all "claims of race-based discrimination under the Equal Protection Clause . . . require that intentional discrimination be alleged in a non-conclusory fashion." *Clyburn v. Shields*, 33 F. App'x 552, 555 (2d Cir. 2002). Greenidge does not advance a specific theory for his equal protection claim in the Amended Complaint, or his opposition brief. Greenidge simply alleges that "it was clear defendant Meehan had

racially profiled him and his passengers" and that "Defendants violated [his] right to equal protection . . . by targeting him based on his race." (Am. Compl. ¶¶ 20, 28). Such "naked allegation[s] that the defendant acted based on the plaintiff's race and color" are "too conclusory to survive a motion to dismiss." *Bentley, Jr. v. Mobil Gas Station*, 599 F. App'x 395, 396 (2d Cir. 2015); *see also Henry v. County of Nassau*, 6 F.4th 324, 335–36 (2d Cir. 2021) ("A plaintiff alleging racial . . . discrimination . . . must do more than recite conclusory assertions. In order to survive a motion to dismiss, the plaintiff must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent."). The fact that Meehan followed Greenidge for a few miles with no lights or sirens, without more, is insufficient evidence of discriminatory intent. *See, e.g.*, *Richards v. City of New York*, No. 24-CV-7074, 2025 WL 2677062, at *5 (E.D.N.Y. Sep. 18, 2025) ("Plaintiff states that he is Black and an immigrant, which he alleges are the bases for his harassment by the NYPD. . . . Plaintiff fails to provide *any* facts to support his claim of selective treatment or that any such selective treatment was based on his race or immigration status. Plaintiff's wholly conclusory and unsupported Equal Protection claim therefore also fails." (quotation omitted)); *Alba v. City of New York*, No. 23-CV-8619, 2025 WL 2420969, at *17 (S.D.N.Y. July 18, 2025) (dismissing plaintiff's equal protection claims where "[n]one of the detectives or officers who responded to the [scene] [were] alleged to have made any racially-charged remarks or engaged in any conduct at the scene that would suggest that plaintiff was arrested because of his race" and "plaintiff point[ed] to no discriminatory policy of the New York Police Department,

and plead[ed] no other facts that could lead one to conclude that a discriminatory purpose motivated the Officers" (quotation and citation omitted)), *report and recommendation adopted*, 2025 WL 2419573 (Aug. 21, 2025). Because Greenidge has not set forth specific facts giving rise to a plausible inference of discriminatory intent, his equal protection claim is dismissed.

## III. *Monell*

Under *Monell*, a municipality may be held liable under Section 1983 if the deprivation of the plaintiff's constitutional rights "is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012). "While municipal liability may be established by demonstrating a formal, officially adopted policy, liability may also attach through the decision of a final policymaker or where a widespread practice is so permanent and well-settled as to constitute a policy with force of law." *Falu v. County of Orange*, 814 F. App'x 655, 658 (2d Cir. 2020) (citing *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 691, 694 (1978)). "Isolated acts of non-policymaking individuals may form the basis of liability if 'they were done pursuant to municipal policy, or were sufficiently widespread and persistent to support a finding that they constituted a custom, policy, or usage' of which supervisors knew or should have known." *Id.* (quoting *Jones*, 691 F.3d at 81).

Greenidge sets forth no specific allegations against Suffolk County. He does not allege any governmental custom, policy, or usage of Suffolk County that led to any violation of his constitutional rights, nor any facts that could support the existence of such a policy beyond those of his own arrest, which are insufficient to state a *Monell*

claim. *See Cotto v. City of New York*, 803 F. App'x 500, 504 (2d Cir. 2020) ("Cotto's allegations do not support a *Monell* claim because they focus on the individual officers and isolated events leading to Cotto's stop, detention, and prosecution without plausibly alleging a custom or policy pursuant to which those violations occurred."); *e.g.*, *Adams v. Orange County*, No. 13-CV-8549, 2015 WL 5459794, at *5 (S.D.N.Y. Sep. 1, 2015) (dismissing *Monell* claim where "Plaintiff ha[d] not identified any specific municipal policy or custom that caused his injuries or provided any allegations supporting a plausible inference of a pattern and practice through a failure to train or supervise"); *Toussaint v. County of Westchester*, 615 F. Supp. 3d 215, 229 (S.D.N.Y. 2022) ("Even if Plaintiff sufficiently pled a constitutional violation, his *Monell* claim would nevertheless fail for lack of facts supporting the existence of a municipal policy or practice, because Plaintiff only alleges facts relating to his own claim."). Accordingly, Greenidge's claims against Suffolk County are dismissed.[2]

## CONCLUSION

For the reasons explained above, Defendants' motion to dismiss is granted in part and denied in part. The Court grants Defendants' motion on Greenidge's Fourteenth Amendment and *Monell* claims, and denies Defendants' motion on Greenidge's Fourth Amendment claim. Greenidge's cursory request for leave to amend, made in the last sentence of his opposition brief, is denied. *See Altayyar v. Etsy, Inc.*, 731 F. App'x 35, 38 n.4 (2d Cir. 2018) ("[P]laintiffs requested leave to amend in a

[2] Greenidge's claims against the SCPD are also dismissed, as he conceded in his opposition that the SCPD is a non-suable entity. (Pl.'s Opp'n to Defs.' Mot. dated Nov. 13, 2025, Dkt. No. 23-9 at 7).

cursory manner without any explanation for how they would be able to cure the complaint's defects. Accordingly, the district court did not abuse its discretion in denying plaintiffs' leave to amend."). Because all claims against Suffolk County and SCPD are dismissed, the Clerk of Court is respectfully directed to remove them from the docket. The remaining parties are directed to submit a proposed discovery schedule to Judge Wicks by **September 21, 2026**. (*See* Order dated Sep. 15, 2025, Dkt. No. 19).

SO ORDERED.

*/s/ Sanket J. Bulsara*
SANKET J. BULSARA
United States District Judge

Date: September 9, 2026
Central Islip, New York